IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark D. Zurawski,                          :
                Petitioner                 :
                                         :
                                         :
        v.                            :
                                         :
                                         :
Unemployment Compensation                  :
Board of Review,                           :   No. 610 C.D. 2015
            Respondent                 :   Submitted: August 14, 2015

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY             FILED: September 9, 2015

Mark Zurawski (Claimant) challenges the order of the Unemployment Compensation Board of Review (Board) that affirmed the referee's denial of benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]

The facts, as initially found by the referee and confirmed by the Board, are as follows:

> 1. Claimant was employed by Craft Oil as a driver at a rate of $18.60 per hour which began December 5, 2011 and last worked on December 3, 2014.
>
> 2. On November 14, 2014, the Employer received a complaint from a driver on the road that a driver of one of their [sic] trucks was driving erratic [sic], was tailgating, changing lanes and erratically driving. The truck number was traced back to the Claimant.

---

[1]    Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

3. Claimant was questioned about the November 14, 2014 incident during which he averred that it was a limo driving and asserted that he should have followed him back to the airport and confronted him.

4. Claimant was warned that this was inappropriate behavior and reminded of the Employer's policy regarding the safety of the operation of its vehicles and standards of conduct.

5. On November 20, 2014 Claimant notified the manager about a minor road incident where he engaged in horn blowing and gesturing with another driver and again was warned.

6. On November 26, 2014 Claimant contacted the Employer to report an incident. On or about the same time, a driver called in to complain about the incident involving the Claimant.

7. The driver reported to the Employer that he was trying to seek direction and was looking at his GPS when the Claimant pulled up behind him, began gesturing, and blowing his horn and did so repeatedly.

8. The driver further reported that he pulled over to look at his GPS to get better directions when the Claimant pulled up behind him, got out of the truck, pulled him out of the car and slammed his arm in the car door all in which words were exchanged.

9. Claimant when questioned about the November 26, 2014 incident admitted getting out of his vehicle and confronting the driver.

10. Claimant was discharged because his conduct violated the standards of conduct policy despite prior warnings about exhibiting similar like conduct.

Referee's Decision, January 23, 2015, (Decision), Findings of Fact Nos. 1-10 at 1-2.

2

The referee determined:

> In the present case, the Referee finds credible the Employer's testimony that Claimant violated it [sic] standards of conduct. Claimant's conduct was so egregious in nature that discharge was a natural result. Because the Employer has met the burden of proving willful misconduct here, a denial of benefits must be held and Claimant is disqualified for the receipt of benefits under Section 402(e). . . .

Decision at 2.

The Board affirmed:

> The Board finds the employer's witness' testimony credible and discredits the claimant's denial of wrongdoing. The employer received three complaints from the general public regarding the claimant's aggressive driving in less than three weeks. On November 26, 2014, the final incident, the claimant's admission that a confrontation occurred and he got out of his vehicle corroborates the unobjected to hearsay evidence that the claimant physically assaulted another driver by grabbing the driver by the throat and slamming him into a vehicle. This behavior is below the standard an employer has a right to expect and constitutes willful misconduct.

Board Opinion, March 31, 2015, (Opinion) at 1.

Claimant contends that his admission that he exchanged words with the driver of another vehicle did not corroborate the hearsay telephone account allegedly made by that driver describing a violent physical altercation.[2] Claimant

_____

[2] This Court's review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or **(Footnote continued on next page…)**

asserts that there is no credible evidence to support the conclusion that he engaged in an act of unprovoked physical violence beyond uncorroborated hearsay testimony.[3]

---

**(continued…)**

findings of fact were not supported by substantial evidence. <u>Lee Hospital v. Unemployment Compensation Board of Review</u>, 637 A.2d 695 (Pa. Cmwlth. 1994).

[3] Claimant further asserts that the Board's determination that Craft Oil Corporation (Petro Choice) (Employer) received three complaints from the general public regarding Claimant was incorrect. Claimant admits that there were two complaints but argues that the "incident" which allegedly occurred on November 20, 2014, did not arise out of a complaint from the general public.

At the hearing before the referee, Jean McGinty, Employer's director of human resources, testified that there were two phone calls from members of the public with respect to Claimant's driving within a two week period and that Claimant admitted to his manager that the manager might receive a phone call because "he had an incident with another motorist on the road." Notes of Testimony, January 20, 2015, (N.T.) at 4.

Tyquan Bambaata (Bambaata), office manager for Employer at the Aston location, testified regarding the alleged incident on November 20, 2014:

> On November 20th he came into my office at the end of his work day and said he just wanted to make me aware of a particular incident on the road that he had with another driver. It was nothing more than horn blowing, hand gestures and that was about the extent of it, but he wanted to make me aware of it. So I made a note of that as well.

N.T. at 7.

Claimant is correct that the Board erred when it stated that Employer received three complaints from the general public regarding his aggressive driving in a three week period in November 2014. However, there were three separate incidents including the November 20, 2014, incident which was reported by Claimant himself. This error does not impact the central question of whether Claimant committed willful misconduct. At most it was harmless error. In <u>Monaghan v. Board of School Directors of Reading School District</u>, 618 A.2d 1239, 1243 (Pa. Cmwlth. 1992), this Court determined that only findings of fact that are necessary to support an adjudication must be supported by substantial evidence. If a finding is not supported by substantial evidence, the reviewing court does not automatically have to reverse. The finding in **(Footnote continued on next page…)**

4

Whether a Claimant's conduct rises to the level of willful misconduct is a question of law subject to this Court's review. Lee Hospital v. Unemployment Compensation Board of Review, 589 A.2d 297 (Pa. Cmwlth. 1991). Willful misconduct is defined as conduct that represents a wanton and willful disregard of an employer's interest, deliberate violation of rules, disregard of standards of behavior which an employer can rightfully expect from the employee, or negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interest or employee's duties and obligations. Frick v. Unemployment Compensation Board of Review, 375 A.2d 879 (Pa. Cmwlth. 1977). The employer bears the burden of proving that it discharged an employee for willful misconduct. City of Beaver Falls v. Unemployment Compensation Board of Review, 441 A.2d 510 (Pa. Cmwlth. 1982). The employer bears the burden of proving the existence of the work rule and its violation. Once the employer establishes that, the burden then shifts to the Claimant to prove that the violation was for good cause. Peak v. Unemployment Compensation Board of Review, 501 A.2d 1383 (Pa. 1985)

The last incident took place on November 26, 2014. Bambaata testified:

> On November 26[th], I initially . . . received a call from Mark [Claimant] himself that said he was in a situation with another motorist. He thought the motorist was

---

**(continued…)**

question must be necessary to the adjudication. In order for a reviewing court not to affirm an adjudication, the finding of fact must be unsupported and necessary to the adjudication. An unsupported finding of fact which is not necessary to the adjudication constitutes harmless error.

following him and he didn't know what was going on. He said I just got into it with a guy. I think the guy is following me. So he pulled over. He called me and maybe – so I said okay, if everything's fine, go ahead and carry on with your route. Two minutes later, I received a phone call from my particular immediate Supervisor, Tom Matthews, that said he received a phone call from a person on the road, a motorist on the road that Mark [Claimant] had got [sic] into a physical confrontation with. That particular motorist had told my particular boss that they were on the side of the road and somehow or another Mark [Claimant] exited his vehicle, pulled him out of his vehicle and grabbed him by the throat and slammed the door on his arm. So my boss advised me he had the gentleman's name, Shane Monty, and his phone number. He asked me could I call him. I called Shane – this Shane Monty myself. I explained to him who I was and if he please could explain the confrontation that may or may not have taken place. He said he was in a road looking at a GPS trying to figure out his whereabouts. Somehow or another, he and the person in the truck got to blowing the horn back and forth to each other. And when he pulled off to the side of the road, the truck followed him to the side of the road. Mark [Claimant] exited the vehicle and confronted the individual and that's where the physical confrontation ensued. Now when Mark [Claimant] initially called me, he didn't tell me that he exited the vehicle. So when Mark [Claimant] got back to the office at the end of the day, I questioned him once, twice about the situation. Then he initially said to me that he got out of his vehicle. I advised him that you should always stay in your vehicle. That's the safest place to be and there was back and forth conversation with me and him about that. And he finished by saying well next time, I won't say anything then.

N.T. at 7-8.


Claimant testified regarding the incident on November 26, 2014:

6

[I] called Mr. Bambaata. I told him that I had somebody that was following the truck that . . . just a few moments earlier, I was eastbound on Lehigh Avenue in Philadelphia. There was . . . a black Jeep with New Jersey license plates. The guy backed out into traffic. Didn't even . . . look to see where he was going. Backed out in front of a – it was a car in front of me. I was in back of the car and this guy backed out. He rolled up about a block and then just stopped dead in the middle of the street. The guy in the car blew his horn. The car moved up. The car in front of me made a right hand turn onto Edgemont Street. The car moved up again. Another half a block, stopped dead in the middle of the street. I went over, I stopped. I gave [it] a minute. I went over. I went to go . . . so I put my signal to go around him – to go left to go around. He put on his left hand turn signal and started to move up, so I couldn't go around him. He stopped dead again in the middle of the street. I blew the horn, went around to the right and went around him. It was an angled part. It was plenty of room on the right to go around this guy. . . . [W]hen I went around, I blew the horn and I went around. He got ticked off I guess because I blew the horn and he instead of making a left turn, he [inaudible] on it and came up in front of the truck. Pulled up in – went around the truck. Actually, he crossed the double yellow line, stopped and got out of his car. There was no confrontation. Nobody got physical with anybody. Mr. Bambaata asked me did I stay in the truck. And the guy got out of his car and came over towards me. I stepped out of the truck only to stand – I stood by the door. I didn't go after this guy. I didn't confront him. I didn't curse at him. I didn't touch him. Nobody did anything. I stood by the side of the truck. And he told me well, why did you get out of the truck? I said because I wasn't going to just sit in there. I had no idea what the guy was going to do and I wanted to be able to be on my feet. I said I didn't go after the guy. I didn't do anything.

N.T. at 11-12.

7

The Board found Bambaata credible and did not find Claimant credible. In unemployment compensation proceedings, the Board is the ultimate fact-finding body empowered to resolve conflicts in evidence, to determine the credibility of witnesses, and to determine the weight to be accorded evidence. Unemployment Compensation Board of Review v. Wright, 347 A.2d 328 (Pa. Cmwlth. 1975). Findings of fact are conclusive upon review provided that the record, taken as a whole, provides substantial evidence to support the findings. Taylor v. Unemployment Compensation Board of Review, 378 A.2d 829 (Pa. 1977).

While Claimant's testimony was not believed by the factfinder, Employer still had the burden of proving that Claimant committed willful misconduct. Claimant argues that the Board's finding that he was guilty of physical violence was based solely upon uncorroborated hearsay testimony which cannot support such a finding. According to Claimant, Claimant's admission to Bambaata that he got out of his truck and "got into it with a guy" did not corroborate Bambaata's testimony that Claimant exited his vehicle, pulled Shane Monty (Monty), the driver of the other vehicle, out of his vehicle, grabbed him by the throat and slammed the door on his arm. His admission did not establish that he grabbed Monty, pulled him out of the vehicle, grabbed him by the throat, and slammed the door on his arm, but the admission did provide substantial evidence that he got out of the truck and confronted Monty.

Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing offered in evidence to prove the

8

truth of the matter asserted." Pa.R.E. 801(c). A "statement" is defined in the Pa.R.E. as "(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion." Pa.R.E. 801(a).

An unobjected to hearsay statement will be given its probative effect and may support a finding of fact if corroborated by any competent evidence in the record. Walker v. Unemployment Compensation Board of Review, 367 A.2d 366 (Pa. Cmwlth. 1976).[4]

This Court agrees with Claimant that any admission he made to Bambaata concerning a confrontation with Monty did not corroborate that he grabbed the driver by the throat and slammed him into a vehicle. However, Bambaata's statement that Claimant told him that "he got into it with a guy" and that "he got out of his vehicle" corroborated the hearsay testimony of Bambaata that Monty told him that Claimant confronted Monty during an incident between them while driving. N.T. at 7.

It is undisputed that Claimant was involved in an aggressive driving incident on November 14, 2014, for which Employer received a telephone call from the other motorist. At that time Claimant was reminded of Employer's policy

---

[4] Claimant did not object to the testimony as hearsay when Bambaata testified at the hearing. At the conclusion of his own testimony, Claimant asserted that what Employer presented was hearsay. N.T. at 13. An objection is waived when it is not made before the referee when there is an opportunity to do so. Williams v. Unemployment Compensation Board of Review, 484 A.2d 831 (Pa. Cmwlth. 1984). Claimant did not raise an objection when he first had the opportunity to do so. But even if he had there was more than enough substantial evidence to establish willful misconduct.

9

regarding the safe operation of its vehicles and received a warning that this behavior was inappropriate. Six days later Claimant informed Employer that he engaged in an incident with another driver which included horn blowing and gesturing. Claimant again received a warning regarding this conduct. Just six days after that on November 26, 2014, Claimant was involved in the incident with Monty. There was substantial evidence to support the Board's determination that Claimant's behavior was "below the standard an employer has a right to expect and constitutes willful misconduct." Opinion at 1. Consequently, the Board did not err when it determined that Claimant committed willful misconduct.

Accordingly, this Court affirms.

_____
BERNARD L. McGINLEY, Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark D. Zurawski,            :
          Petitioner       :
                           :
           v.              :
                           :
Unemployment Compensation  :
Board of Review,         :   No. 610 C.D. 2015
          Respondent   :

## **O R D E R**

AND NOW, this 9th day of September, 2015, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

_____
BERNARD L. McGINLEY, Judge